IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST SAINT LOUIS DIVISION

| | |
|---|---|
| DAVID E. FIELDS; <br> PASSION GREER, <br>     Petitioner, <br> v. <br> ST. CLAIR COUNTY; <br> ST. CLAIR SHERIFF'S OFFICE; <br> BELLEVILLE POLICE DEPARTMENT; <br> ALL INVOLVED OFFICERS, KNOWN <br> AND UNKNOWN, <br>     Respondent. | 25-1806-SMY <br><br> Case No. |

MOTION UNDER 42 U.S.C. §1983 FOR
REDRESS OF VIOLATION OF CONSTITUTIONAL RIGHTS

    Comes now David Fields, with Passion Greer, pro se, suing St. Clair County and the St. Clair County Sheriff's Office, Belleville Police Department and all involved officers-known and unknown, for violation of their Constitutional Rights under color of law, pursuant to 42 U.S.C. §1983. As Fields is a pro se inmate with no legal training and only the limited resources of the prison law library, Fields asks this Honorable Court not to hold him to the same standards as a professional attorney, but to give him the liberal treatment of cases like "<u>Nichols v. Michigan City Planning Department</u>," 755 F3d 594, 600 (7th Cir., 2014).

<u>Standard Under §1983</u>

42 U.S.C. §1983 creates a federal remedy against "anyone who, under color of state law, deprives 'any citizen of the United States... of any right, privilege, or immunity secured by the Constitution, or federal laws,'" "Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Department of Health," 699 F3d 962, 972 (7th Cir., 2012). The Supreme Court has held this language means exactly what it says and must be given its full scope, "Maine v. Thiboutot," 448 US 1, 4 (1980).

The standard is the same for establishing liability and in asking for punitive damages. The Defendants must have recklessly disregarded or displayed deliberate indifference to the Plaintiffs' federally recognized rights, "Woodward v. Corr. Med. Servs of Ill., Inc.," 368 F3d 917, 930 (7th Cir., 2004) (citing "Smith v. Wade," 461 US 30, 35 (1983); "Walsh v. Mellas," 837 F2d 789, 801 (7th Cir., 1988)). As charges were ultimately forwarded and prosecuted, both the Department and City participated in the alleged violations to establish liability, "Ross v. Gossett," 33 F4th at *14-16 (7th Cir., 2022).

## List of Known Defendants

These are the names of the participating officers listed in official reports. Others may have been involved beyond these, but not named:

- Lieutenant W. Keyes
- Captain Greg Hosp
- State Canine Officer Ethan Hanrahan
- Investigator Sean Schmidt

Detective Aaron Hackleman

Officer Darren Rucker

Officer C. Fruend

### Factual Background

Based on an anonymous tip, St. Clair County Sheriffs began monitoring Greer's residence, looking for evidence of drug activity. This surveillance was run by Capt. Hosp and signed off on by Lt. Keyes. Throughout December, 2023 and January 2024, this residence was repeatedly watched, primarily by DTU Investigator Hackleman, but nothing was seen justifying a search warrant.

So, on January 11, 2024, Investigators decided to manufacture a reason. Waiting until Fields left the premises, Hackleman, Rucker, and Hosp followed him. Using a traffic infraction as a pretext, investigating officers decided not to issue a citation, but to hold Fields and Greer until drug dogs arrived to do a search.

After the drug dog alerted (questions were raised at hearing as to whether it was ordered to do so), both Fields and Greer were removed from the vehicle. Officer Fruend was called in to do a female pat down, finding nothing and Rucker found nothing on Fields. Detective Hackleman searched the vehicle, finding marijuana. Both Fields and Greer were arrested.

After the arrest, the officers on site conspired, on video, to circumvent the Court and search Greer's residence without a warrant. Hackleman and Investigator Schmidt interrogated Greer late in the evening, pressuring her to let them search her home.

Finally, she agreed, taking Hosp, Schmidt, and Hackleman. More marijuana and a gun were found.

Fields was charged with Felon in Possession of a Firearm and Possession with Intent to Distribute Marijuana. He retained private counsel at his own expense. Denied bail, he was held over a year pending hearing.

As the attached order shows, these charges were eventually dismissed, over a year later, after the evidence was excluded as the product of an illegal search. Stopping a driver for speeding, then detaining them for drugs after the traffic stop itself had concluded was not reasonable under the 4th Amendment.

Instead of releasing him, however, state officials continued his custody while they pushed his federal officer to revoke his supervised release.

## Argument

In general, courts are instructed to be exceedingly sparing in granting a suppression of evidence. It is not to be done lightly, police good faith and reasonableness are the "rule" here. Courts are usually to presume that police, even if they lack probable cause, had "good faith" in the actions that led to the stop, or search see, e.g. "Edmond v. United States," 899 F3d 446, 453 (7th Cir., 2018). Put simply, police misconduct must be obvious and significant for judges to grant a suppression. Suppression is a sort of "last resort" where police acted in such utter disregard of the law that suppression is necessary to curb further misconduct in the future, protecting the public, "United States v. Cade,"

4

93 F4th 1056 at 14 (7th Cir., 2024).

Fields' case supplied this level of misconduct. St. Clair Sheriffs, in full knowledge of their lack of probable cause, conspired to manufacture a traffic stop as a pretext to do an illegal search and seizure of Fields, Greer, and their automobile. The police report forthrightly admits as much. Sheriffs determined from the moment they saw Fields leave the surveillance house with a backpack that they would follow the car and find reason to search that backpack and vehicle.

While the report indicates Fields was speeding, upon pulling Fields over, the Sheriffs did not ask for IDs, run a background check, or even issue a warning. They instead immediately told Fields they were detaining his car for a K9 search and called a unit, holding Fields until it arrived. Video would show the officer ordering his dog in a foreign language to hit, which would give them cause to search the vehicle and its occupants.

Upon finding what they wanted, the Sheriff's officers huddled in front of the vehicle (perhaps not realizing that the camera was still running) and discussed pressuring Greer into admitting them to the house without going through a magistrate. Greer gave them access where they found a gun that they simply assumed belonged to Fields, despite it being otherwise registered.

Fields was taken into custody, denied bail, and held pending hearing for 15 or 16 months. At a suppression hearing, the judge was stunned by the conduct of the Sheriffs. In his order, he found the only possible reason given by the Officers to pull Fields over was the traffic violation; otherwise, the police acted completely

lawlessly ab initio. That said, none of the typical traffic stop actions were taken. Officers already decided, before they called the dogs, not to issue a citation.

Case law was beyond clear, at that point, that the traffic stop had concluded, and that the Sheriff's Department were to let Fields and Greer go—the opposite of what occurred. Finding officers' misconduct to meet the exceptionally high threshold for exclusion, the Judge invalidated the fruits of the search, declaring it unlawful.

Because of the fact that a judge has already declared that the search was unlawful, and that the case was dismissed as a result, this is a relatively easy case. No questions about the "Heck" doctrine arise, nor does the Court need to address the question of the search's legality in the first place, as this has already been done.

Moreover, the often difficult questions of qualified immunity seem to also to have been addressed by the state court. The trial judge determined simply that "established law" informed the officers they were to stop the search at that point. No new ruling was being made—this case was clear and obvious; the officers in question should have known what they were doing was illegal. This is exactly the findings required to overcome a defense of qualified immunity, "Ashcroft v. al-Kidd," 563 US 731, 735 (2011).

With the case already dismissed on a finding of Constitutional violation and the reasoning that it was clearly established at the time of the search, there is little left to decide in the case. The Court order, herein included, is practically a prima facie pre-ruling on a §1983 claim. All that remains is damages.

## Fields

As noted, Fields spent 15 or 16 months in county jail awaiting hearing. This incarceration cost him his job, and a weekly check between $1400 - $1650 x 64 weeks. Fields spent over $1,200 every month while in county, contacting his family via phone, email, etc., commissary and more. He would ask for that to be reimbursed. While Fields is uncertain what the going rate of wrongful incarceration and mental anguish is in Illinois, and how it is calculated (i.e. daily, weekly, etc.), he suffered that general loss. Not only is his freedom precious, something that can never be restored, the long-term effects of incarceration in decreased lifespans and diminished health is well known, e.g. "Kitchen v. Whitmer," 486 FSupp 3d 1114, 1126 (ED Mich, 2020).

Fields, because of his charges, was also forced to hire an attorney to defend him. This was a significant expense, amounting to about $10,000. But for the blatantly illegal conduct of St. Clair's Sheriff's Department, such an expense would be unnecessary. The Officers responsible should pay all or part of this expense.

Due to Fields' incarceration, he lost his truck, a 2023 Silverado, approximately worth $73,000. He had already paid around $20,000 on that vehicle. Unable to pay his bills, it was repossessed, and this damaged his credit. The vehicle Fields and Greer were in during the search was a rental, which police damaged. Fields had to pay for these damages caused by their negligence. He also incurred significant debt and penalties from late bills on credit cards, etc. Fields will submit detailed evidence upon his upcoming release.

Finally, because the Court below already determined that the Offi-

cers were on full notice of the illegality of their course of action, they should be subject to punative damages of no less than $100,000 for each individual defendant, and no less than $1 million per county/state entity for perpetuating the violation in taking it to trial despite the obvious violation of the officers. Only through such fines and penalties can respect for the law be upheld.

### Greer

That Greer was a book and release necessarily limits her damages in relation to Fields, but does not eliminate them. Aside from the shock and damage to the psyche of an arrest, recognized since at least "Miranda v. Arizona," 384 US 436 (1966), the negative consequences of an arrest can be almost as severe as conviction, disqualifying one from certain loans, government benefits, housing opportunities, and erecting employment hurdles, among more, e.g. "Sadiqq v. Bramlett," 559 FSupp 362, 368 (ND Ga, 1983).

Greer would thus ask for $10,000 per officer, personally not professionally, for this violation.

Further, because of Fields' incarceration, she has lost his companionship and affection, long held to be a damage recognized at law, e.g. "Ruban v. Iran," 637 F3d 783, 786 (7th Cir., 2011), as well as his financial assistance and support. She asks for at least $500,000 jointly for this loss.

Finally, Greer joins Fields' request for punative damages. While she would seek them to be imposed additionally to Fields, she seeks no specific amount. However, she does ask for the Court to impose at least $1 million in fines in addition to the parties' damages to pro-

mote respect for the law and deter future violations upon citizens who may lack even Fields' and Greer's modest means.

While Greer's overal injury might not be as severe as Fields', the Constitutional violation itself might actually be more serious. Unlike Fields, who was suspected of a crime, Greer was arrested and detained solely to pressure her into allowing another illegal search to obtain evidence against Fields. At a minimum, the fine and punitive damage should take this plainly bad faith motive into account.

## Conclusion

In this case, there is no more damning evidence than the officers involved's own reports and admissions under oath. At every step of the way, every officer fully knew they were violating clearly established law and were so certain they were going to get away with it that they openly admitted it in their reports. The clearly bad faith efforts to disregard Fields' and Greer's clearly established Constitutional rights and to deprive them of their freedom, no matter how long, should not be allowed to go unpunished. Both parties should be awarded the asked for damages, or more.

Respectfully submitted this day of September, 2025,

_/s/ David Fields_
David E. Fields

_/s/ Passion Greer_
Passion Greer

## St. Clair County Sheriff's Office

750 N 5th Street, Belleville, IL 62220

### Offense / Incident Report

| Report Date | Type of Incident | Complaint No. | Case Status |
|---|---|---|---|
| 01/11/2024 1917 | MANUFACTURE, DELIVER, POSSESS WITH INTENT TO DELIVER CANNABIS - MORE THAN 500G BUT LESS TH | 24-00344171 | OPEN |

Pine Drive, Belleville, IL at approximately 4:40 p.m. At approximately 4:50 p.m., a Black Dodge Challenger, bearing MO #XH7L9S arrived at the residence. I, Capt. Greg Hosp #191, recognized the driver as being David FIELDS. FIELDS entered the residence through the front door and within 5 minutes a grey GMC truck, bearing IL #3423795B pulled into the driveway. A B/F exited the truck walked to the front door of 1129 Pine Drive and was let inside a short time thereafter. The B/F was only inside a few minutes and left in the grey GMC truck. It should be noted, the B/F did not have anything large in her possession as she exited the residence and no further surveillance of the GMC truck was conducted.

At approximately, 4:57 p.m., a red Dodge Ram truck, bearing IL #2951677B pulled up in front of 1129 Pine Drive. A B/M exited the vehicle and went inside of the residence. The driver of the red Dodge Ram stayed at the residence until roughly 5:58 p.m. before walking out and proceeding towards 11th Street. Surveillance units attempted to follow the truck but were unable to maintain a visual of the vehicle.

At approximately 6:05 p.m., FIELDS and his girlfriend, GREER walked out of the residence and entered the Black Dodge Challenger. As FIELDS exited the house, I observed him to have a black backpack on to which he placed inside of the Challenger prior to leaving the residence. Surveillance units followed FIELDS as he drove W/B on RT 15 where Officer Rucker #121 conducted a traffic stop for a speeding violation. It should be noted, I followed behind FIELDS from 11th Street until the location of the traffic stop, during that time, FIELDS speed reached upwards of 70 mph hour.

See Belleville Police Department report #24-00212 for details regarding the stop and seizure of the below listed evidence. It should be noted, Inv. Hackleman took possession of the evidence items recovered from the traffic stop and transported it to the DTU office for processing and packaging:

- Exhibit #1: One black Tommy Hilfiger Book Bag (located in vehicle)
- Exhibit #2: 13 individual bags of suspected cannabis having an approx weight of 631.8 grams recovered from Exhibit #1

It should be noted Exhibit #2 was field tested and present positive for the presence of marijuana. See attached photograph of the weight and test result.

Both FIELDS and his passenger GREER were transported to the St. Clair County Jail for detainment.

At approximately 7:15 p.m., myself and Inv. Hackleman conducted an audio/video interview with

| Reporting Officer   SO 191   CAPTAIN GREG HOSP | Approving Officer (Cover Pages Only) |
|---|---|

Page 3 of 6          Printed   01/12/2024 1241          © 1994 - 2019 Omnigo Software St. Louis MO omnigo.com

## St. Clair County Sheriff's Office
700 N 5th Street, Belleville, IL 62220

### Offense / Incident Report

| Report Date | Type of Incident | Complaint No. | Case Status |
|---|---|---|---|
| 01/11/2024 1917 | MANUFACTURE, DELIVER, POSSESS WITH INTENT TO DELIVER CANNABIS - MORE THAN 500G BUT LESS TH | 24-00344DT | OPEN |

GREER. GREER was provided with her Miranda warning to which she signed and initialed her understanding of her rights. The following is a bullet summery of the interview with GREER. See the full audio/video for a complete version of the interview.

- GREER when asked where she lived stated she resided in Alton and had been living there for approx. 2 years.
- GREER was confronted with the fact that investigators knew she lives at 1129 Pine Street, Belleville, IL.
- GREER was asked what else (contraband) was inside of the residence. GREER admitted there was weed in the house and said she also had a gun.
- GREER was asked if there were any other weapons in the residence to which she said no others that she was aware of.
- GREER was asked if she would be willing to allow us to go inside of the residence to collect the remaining contraband. GREER was hesitant and stated she wasn't sure where it was at in the house.
- It was pointed out to GREER that there was a lot of traffic coming and going from her house to which she did not deny.
- GREER was asked if she knew what FIELDS had in his backpack and GREER stated she did not.
- GREER agreed to accompany investigators and allow them to remove the contraband from the house.

The interview was terminated shortly thereafter and GREER accompanied, myself, Inv. Hackleman and Inv. Sean Schmidt #260 to the residence on Pine Drive. GREER was placed in the front seat of Inv. Hackleman's OGV and driven to 1129 Pine Drive. GREER opened the front door, walked investigators to the joint bedroom where her and FIELDS sleep and pointed to a large blue duffle bag. It should be noted, in plainview on the bed was a rubber maid container with a baggie of cannabis sitting inside. On the bedroom floor was a large vacuum seal machine with two boxes of vacuum sealed bags. In one of the bedroom dressers, I located numerous pieces of mail in the name of David FIELDS. It should be noted, the address on the mail was to 6901 Osage Drive, Belleville, IL but numerous pieces were located throughout the residence showing FIELDS regularly occupies the Pine Drive residence.

The following are the evidence exhibits recovered from 1129 Pine Drive, Belleville, IL:

- Exhibit #3: Packaging Material (located in the master bedroom and secondary bedroom)
- Exhibit #4: Digital Scale

| Reporting Officer SO 191 CAPTAIN GREG HOSP | Approving Officer (Cover Pages Only) |
|---|---|

Page 4 of 6   Printed 01/12/2024 1241   © 1994 - 2019 Omnigo Software St. Louis MO omnigo.com

## St. Clair County Sheriff's Office
700 N 5th Street, Belleville, IL 62220

### Offense / Incident Report

| Report Date | Type of Incident | Complaint No. | Case Status |
|---|---|---|---|
| 01/11/2024 1917 | MANUFACTURE, DELIVER, POSSESS WITH INTENT TO DELIVER CANNABIS - MORE THAN 500G BUT LESS TH | 24-00344DT | OPEN |

The interview was terminated shortly thereafter and FIELDS was returned to the detainment area.

It should be noted, Inv. Hackleman advised the Belleville Police Department had received a telephone call from a women claiming to be FIELDS mother who was attempting to claim the gun that was found beside GREER and FIELDS bed. The Glock model 21 is a large framed semiautomatic pistol and not designed for smaller hands. It should also be noted that one of the magazines located with the firearm was an extended clip which holds 30 rounds of ammunition and is approx. 10 inches in length. All of which are out of the normal for an older female to carry.

The case will be forwarded to the St. Clair County State's Attorney's office for prosecution.

Respectfully Submitted

Capt. Greg Hosp #191

Reporting Officer    SO 191    CAPTAIN GREG HOSP

Approving Officer (Cover Pages Only)

Printed    01/12/2024 1241

© 1994 - 2019 Omnigo Software St. Louis MO omnigo.com

Page    6 of 6

IN THE CIRCUIT COURT
FOR THE TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

FILED
ST. CLAIR COUNTY
MAY 5, 2025

CIRCUIT CLERK

PEOPLE OF THE STATE OF ILLINOIS,
Plaintiff,

v.

DAVID FIELDS,
Defendant.

Case Number 24 CF 315

## ORDER

The matter is before the Court on the Defendant's Motion to Suppress. The Court has considered evidence presented, arguments of counsel and memorandum filed by both parties.

The Defendant's motion is granted. Items seized during the search of the vehicle the defendant was operating are suppressed.

At the time of the traffic stop in this matter, Officer Rucker possessed probable cause to believe that the defendant had exceeded the posted speed limit. His belief was based upon the observations of Detective Hosp. The officer's testimony makes it clear that there was no intent to issue a citation regarding the traffic violation. In fact, this stop did not include any of the typical police officer tasks normally occurring during a traffic stop for a minor traffic violation, i.e., driver license check, outstanding warrant check, inspecting vehicle registration and insurance verification and/or inquiry into path of travel and destination.

Despite the officer's testimony and the state's theory of the case, the Court finds that in order to justify the initial stop, the mission was in fact to enforce the state's traffic laws. This mission ended when Rucker did not pursue a citation. Applying established case law, the police contact should have ended at that point and should not have been delayed by the canine sniff.

Clerk to notify all parties.

ROBERT B. HAIDA, CIRCUIT JUDGE

5/5/25